Minute Order Form (06/97)

# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Blanche Manning | Sitting Judge if Other than Assigned Judge | Morton Denlow |
|---|---|---|---|
| **CASE NUMBER** | 00 C 3174 | **DATE** | 1/18/2001 |
| **CASE TITLE** | WSG Executive Air, Inc. vs. Bill Bradley for President, Inc. | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]
(2) ☐ Brief in support of motion due _____.
(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.
(4) ☐ Ruling/Hearing on _____ set for _____ at _____.
(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(7) ☐ Trial[set for/re-set for] on _____ at _____.
(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.
(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
    ☐ FRCP4(m)   ☐ General Rule 21   ☐ FRCP41(a)(1)   ☐ FRCP41(a)(2).
(10) ■ [Other docket entry]   Enter Memorandum Opinion and Order. Plaintiff's motion to dismiss the amended counterclaims is denied.

(11) ■ [For further detail see order attached to the original minute order.]

| | No notices required, advised in open court. | | | Document Number |
|---|---|---|---|---|
| | No notices required. | | number of notices | |
| ✓ | Notices mailed by judge's staff. | | JAN 19 2001 | |
| | Notified counsel by telephone. | | date docketed | |
| | Docketing to mail notices. | | | |
| | Mail AO 450 form. | | docketing deputy initials | |
| | Copy to judge/magistrate judge. | | 1/18/2001 | |
| DK | courtroom deputy's initials | Date/time received in central Clerk's Office | date mailed notice  DK  mailing deputy initials | |

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| WSG EXECUTIVE AIR, INC., an Illinois corporation, | ) ) ) |
| Plaintiff/Counter-Defendant, | ) ) No. 00 C 3174 ) |
| v. | ) Magistrate Judge Morton Denlow ) ) |
| BILL BRADLEY for PRESIDENT, INC., a New Jersey Not-For-Profit corporation, | ) ) ) ) |
| Defendant/Counter-Plaintiff. | ) |

DOCKETED
JAN 19 2001

## MEMORANDUM OPINION AND ORDER

WSG Executive Air, Inc., ("WSG" or "Plaintiff") and Bill Bradley for President, Inc., ("Committee" or "Defendant") entered into an Airline Contract whereby WSG would provide charter service for the Committee. The Committee terminated the Contract before it was fully carried out.

WSG filed its verified complaint in the Circuit Court of Cook County against the Committee, alleging the Contract was terminated without justification and seeking $72,290.81 for breach of contract. The case was removed to this Court by the Committee. On October 25, 2000, the Committee filed an amended answer, affirmative defenses and counterclaims, seeking actual damages exceeding $200,000. WSG now brings a motion to dismiss the amended counterclaims for failure to state a claim upon which relief may be

granted. On January 10, 2001, oral argument was heard. The Court denied the motion to dismiss at the conclusion of the argument. This opinion sets forth the detailed reasons for the denial of the motion to dismiss.

## I. BACKGROUND[1]

### A. The Contract

On January 28, 2000, WSG and the Committee entered into an Airline Charter Contract ("Contract"). (Am. CC ¶ 7). The Committee paid WSG a deposit of $219,150. (Am. CC ¶ 11). The Contract provided for a guaranteed 120 hours from February 1, 2000, through March 7, 2000, at a rate of $4450 per hour. (Am. CC ¶ 12). The Contract provided for a cancellation charge of $3000 per hour for any unused portion of the 120 guaranteed hours. (Id.) The Committee alleges that the original Contract terms were amended on February 9, 2000. (Am. CC ¶ 13). The alleged amended Contract provided for a guarantee of 92.13 hours for the same time period at an increased rate of $4900 per hour. (Am. CC ¶ 14). The cancellation charge remained the same. (Id.).

On February 18, 2000, at approximately 12:53 p.m., WSG faxed an invoice to the Committee which charged the Committee $4900 per hour for the flight hours after the alleged amendment in February. (Am. CC ¶ 15). Before the Committee received the invoice at 12:53 p.m., it received an erroneous invoice. (Am. CC ¶ 19). When it received the

---

[1] The following facts are taken from Defendant's amended counterclaims and are presumed true only for purposes of this motion. *Cornfield v. Consolidated High School District No. 230*, 991 F.2d 1316, 1324 (7th Cir. 1993).

2

erroneous invoice, the Committee called WSG and according to the Committee, WSG acknowledged that the Contract had been amended to establish the new hourly rate. (Am. CC ¶¶ 20-22). The Committee paid the February 18 invoice in full and WSG accepted the payment. (Am. CC ¶¶ 24 and 25).

There are three sections of the Contract that pertain to the issues in this case.

(1) Paragraph 8 states:

> The Charterer may cancel this Agreement without further cancellation charges or penalties if WSG Executive's service under this agreement is subject to repeated delays, or otherwise fails to meet professional airline standards. The Charterer, however, shall first provide WSG Executive Air, Inc. with written notice of any issue(s), and allow WSG Executive Air, Inc. to correct the problem within a 5 day period. If the problem remains unsolved after the 5 day period, the Charterer may then exercise the cancellation of the agreement without penalty.

(2) Paragraph 13 states in pertinent part:

> In the event one party fails to comply with any of its duties, obligations, covenants, representations or warranties hereunder,...then the other party, shall have the right to terminate this Agreement immediately. Such right of termination, whether or not exercised, shall not be an exclusive remedy, but shall be in addition to all other legal and equitable rights and remedies available to such party.

(3) Paragraph 16 states:

> The Secret Service retains the right to refuse any flight they deem unsafe and/or will cause harm to the Candidate and Associates.

## B. Events Leading Up To Termination of Contract

On February 2, 2000, on a transcontinental flight carrying the Committee the Aircraft's heating system failed. (Am. CC ¶ 32). Shortly after that flight, the Committee informed WSG that the Aircraft failed to meet applicable standards, in breach of the Contract. (Am. CC ¶ 36). Furthermore, the Committee threatened to terminate the Contract due to WSG's breach and told the Committee the Contract would be terminated unless adjustments were made to the aircraft or the Contract was renegotiated. (Am. CC ¶ 37).

On February 19, 2000, the Aircraft departed from St. Louis carrying Bradley, campaign workers, and Secret Service agents. The Aircraft was forced to return to St. Louis and make an emergency landing. (Am. CC ¶ 39). After the emergency landing, the Secret Service told the Committee Bradley should no longer fly on the Aircraft. (Am. CC ¶ 41).

The next day, the Committee terminated its contract with WSG via a letter sent to WSG's president, James Mecha. (Am. CC ¶ 42). The Committee requested the return of its deposit, less any amounts for catering that had not yet been paid. (Id.). WSG did not return the Committees' deposit, instead it sent a "final invoice." (Am. CC ¶ 48).

## C. The Committee's Amended Counterclaims

The Committee's Amended Counterclaims assert breach of contract by WSG arising out of the amended Contract. It claims it properly terminated the Contract and that WSG has "improperly and unlawfully" refused to return the Committee's deposit.

The Committee seeks return of the $219,150 deposit, minus any legitimate charges on the final invoice. The Counterclaims allege that no cancellation fee is owed because the Committee was justified in terminating the Contract under the material breach doctrine, as well as under three separate provisions of the Contract. In the alternative, the Counterclaims allege that even if the termination was not justified, the cancellation fee is approximately $123,000, which is less than the security deposit. This fee differential is due to the alleged amendment of the Contract changing the hour requirement and the price.

The Committee contends its termination of the Contract was justified due to "WSG's failures to perform its contractual duties, obligations, covenants, representations and warranties." (Committee Br. ¶ 44) The Committee alleges these failures resulted in a material breach of the Contract justifying its termination of the Contract and requiring no cancellation fee be charged. Furthermore, the Committee pleads that the termination of the Contract was also justified under paragraphs 8, 13 and 16 of the Contract.

## II. STANDARD OF REVIEW

In analyzing a motion to dismiss, the court must accept as true the well-pleaded factual allegations and the inferences reasonably drawn from them in the light most favorable to the non-moving party. Fed.R.Civ.P. 12(b)(6); *Wilczynski v. Lumbermens Mut. Cas. Co.*, 93 F.3d 397, 401 (7th Cir. 1996). A motion to dismiss may be granted only if the court concludes that "no relief could be granted under any set of facts that could be proved consistent with the allegations." *Hishon v. King & Spalding*, 467 U.S. 69, 73, 104 S.Ct. 2229, 2232 (1984).

# III. THE COMMITTEE PLEADS SUFFICIENT FACTS TO STATE A CLAIM THAT ITS TERMINATION OF THE CONTRACT WAS LEGALLY JUSTIFIED.

## A. Material Breach Doctrine

It is well established in Illinois contract law that a "material breach of a contract provision will justify non-performance by the other party." *Arrow Master, Inc. v. Unique Forming Ltd.*, 12 F.3d 709, 714 (7th Cir. 1993). In determining whether there has been a material breach, the court must ask whether " the matter, in respect to which the failure of performance occurs, is of such a nature and such importance that the contract would not have been made without it." *Arrow*, 12 F.3d at 715. The question of whether there has been a material breach of contract is a question of fact for the court. *Arrow*, 12 F.3d at 714. The power to terminate a contract based on a material breach is one which is a general right of all parties to a contract. *Equal Employment Opportunity Commission v. North Knox School Corporation*, 154 F.3d 744, 748 (7th Cir. 1998).

At a minimum, the Amended Counterclaims allege a material breach of contract. They allege facts concerning the Committee's termination of the Contract which must be assumed true for purposes of analyzing WSG's motion to dismiss. The Committee alleges specific facts concerning problems with the Aircraft. Whether these facts are sufficient to meet the standard for a material breach are questions of fact to be decided at trial. However, these facts are sufficient to withstand a motion to dismiss.

WSG argues the material breach doctrine does not apply in this case because the Contract did not have a provision for such a remedy. However, Paragraph 13 of the Contract specifically states the contractual remedies "shall not be an exclusive remedy." Therefore, the common law doctrine of material breach is not barred by the Contract.

**B.     Paragraph 13 of the Contract**

Paragraph 13 of the agreement states, " In the event one party fails to comply with any of its duties, obligations, covenants, representations or warranties hereunder,...then the other party, shall have the right to terminate this Agreement immediately." The Committee's Amended Counterclaims plead facts that raise fact issues under paragraph 13.

**C.     Paragraph 16 of the Contract**

Paragraph 16 provides that "[t]he Secret Service retains the right to refuse any flight they deem unsafe and/or will cause harm to the Candidate and Associates." The Amended Counterclaims allege that after the emergency landing in St. Louis, the Secret Service told the Committee Bradley should no longer fly on the Aircraft. (Am. CC ¶ 41). This is sufficient to state a claim under Paragraph 16 of the Contract.

**D.     Paragraph 8 of the Contract**

Paragraph 8 provides that "The Charterer may cancel this Agreement without further cancellation charges or penalties if WSG Executive's service under this agreement is subject to repeated delays, or otherwise fails to meet professional airline standards. The Charterer, however, shall first provide WSG Executive Air, Inc. with written notice of any issue(s), and

7

allow WSG Executive Air, Inc. to correct the problem within a 5 day period..."

The Committee does plead various problems with the Aircraft, however, there are no facts to indicate the Committee provided any written notice of these problems. The Committee cannot rely on this section of the Contract for its breach of contract claim. Nevertheless, because the Committee pleads sufficient facts alleging the material breach doctrine and the other two paragraphs of the Contract, it still survives WSG's Motion to Dismiss.

## IV. CONCLUSION

For the foregoing reasons, **Plaintiff's motion to dismiss the amended counterclaims is denied.**

**SO ORDERED THIS 18th DAY OF JANUARY, 2001.**

*Morton Denlow*
_____
**MORTON DENLOW**
**United States Magistrate Judge**

**Copies Mailed or Delivered To:**

| | |
|---|---|
| James M. Davis | Gary Feinerman |
| Stone, Pogrund & Korey | Audrey Fried-Gruschcow |
| 221 North LaSalle Street, Suite 3200 | Mayer, Brown & Platt |
| Chicago, Illinois 60601 | 190 South LaSalle Street |
| **Attorney for Plaintiff** | Chicago, Illinois 60603 |
| | **Attorneys for the Defendant** |